FISCO INTERNATIONAL CORPORATION, Appellant, *v.* LOBEL BLUMENFRUCHT, Respondent.

First Department, February 2, 1954.

*William E. Friedman* of counsel (*Baer, Marks, Friedman, Berliner & Klein,* attorneys), for appellant.

*Irving A. Thau* of counsel (*Jacob D. Fuchsberg* with him on the brief; *Jacob D. Fuchsberg,* attorney), for respondent.

BERGAN, J. Defendant Blumenfrucht is a Belgian dealer in coffee, sugar and spices and has been in that business twenty-eight years. His place of business is in Brussels. Plaintiff corporation is a New York importer. In November and December, 1951, plaintiff bought 12,000 bags of coffee from defendant for $783,900 to be shipped from Holland.

A dispute arose between the parties over the quality of the coffee furnished by defendant under the agreement. Litigation began, instituted separately, one party against the other. On February 15, 1952, plaintiff instituted an action in the New York Supreme Court against defendant for $120,000 for breach of contract, although the agreement between the parties on the sale of coffee provided that "all claims" were to be settled "by friendly arbitration in Belgium."

Three days later the defendant instituted an action against plaintiff and against the Credit Suisse which had issued a letter of credit at the instance of defendant payable to plaintiff under certain contingencies in connection with the coffee shipments. An order to show cause on an application for a temporary injunction restraining the payment of the letter of credit to plaintiff was obtained by defendant's lawyer February 18th, and was returnable at Special Term February 21st. The order contained a temporary stay restraining payment pursuant to the letter of credit.

After the argument of the motion, and on the same day, the defendant and plaintiff's president Fischer and their lawyers had what defendant's brief here describes as a conference with "considerable discussion * * * which sought to explore the possibilities of settling the dispute between the plaintiff and defendant" but which did not reach a settlement.

Three days later, on Sunday, February 24th, the parties met without their attorneys in the home of plaintiff's president Fischer and undertook to settle their differences directly. They wrote down their composition of terms in German which Fischer translated into a document in English which both parties signed.

The document recited that the outstanding claims " will be settled " by defendant paying plaintiff $18,000; by defendant delivering to plaintiff 4,000 additional bags of coffee at $57 per 50 Kilos CIF New York; by delivery from defendant to plaintiff of bills of lading of " all the coffee sold " to the plaintiff; by the delivery by plaintiff to defendant of " the official documents relating to the sampling of the coffees " sent by a certain ship and sold to plaintiff.

Defendant did not pay the $18,000 and did not deliver the additional 4,000 bags of coffee, and this action is maintained by plaintiff for $28,560 for breach of the written agreement of settlement. Defendant claimed the agreement of settlement was induced by fraud and after a trial the jury found in his favor. We are of opinion the verdict is against the weight of credible evidence.

Various reasons have been advanced by defendant in the course of this litigation why he should not be bound by the document he signed. His answer alleged, among other things, that he was " under the influence of spiritous wines and liquors " when he signed the instrument; there is a suggestion in his testimony that the original instrument in German carried out defendant's intent, but that the English translation which he signed did not reflect the German text and the inference left by defendant's testimony is that he did not quite fully understand the English text, and the English text omitted certain revisions that the German text had embodied. The claim of such intoxication that defendant did not know what he was signing at the time of settlement, thus reflected in the pleading, was disavowed by defendant himself on the trial.

On the question of his acquaintance with English documentary language, it is interesting to note from an examination of the exhibits, that the printed forms regularly used by defendant in his business describe the business itself in the English language as " import, export, commission " and " colonial products "; refer to a " cable address "; contain the English expression " all codes used "; and in one exhibit the printed English expression " Contract No." and printed English words such as " quantity," " article," " price," " mode of packing " appear as well as whole sentences printed in English.

The defense of fraud as it remained at the end of the trial and the theory upon which it was submitted to the jury, however, was narrowed down to a claim that plaintiff had induced defendant's agreement to settle and his signature to the document of settlement by two false representations: (a) that the coffee which defendant had sold plaintiff was not of good quality; and (b) that plaintiff had documents to prove that the coffee was not of good quality. These were the bases of fraud submitted to the jury to avoid the effect of a clearly expressed instrument of adjustment.

Plaintiff's argument and brief upon this appeal demonstrate from defendant's own testimony that he placed no reliance on the claim by plaintiff that the coffee was not of the agreed quality. Defendant testified that he had himself made tests of the coffee abroad and the " tests showed that the coffee was perfect " and he testified further that he had contended in his various conferences with plaintiff's president, including the conference at which the instrument of settlement was signed, that his coffee was " perfect."

But entirely aside from this part of the testimony, it seems incredible to us that a man who sells merchandise and gets into a dispute with the buyer about quality leading to two separate lawsuits, one against the other, in which quality was the core of the controversy, would be likely to be misled by the statements of the man on the other side of the litigation on the very subject in dispute into signing an agreement of settlement.

Indeed it is difficult to conceive of any conference looking toward settlement of litigation where adverse claims and contentions are not advanced over the subject matter in issue. The settlement is the accord which ends the argument. An instrument born in the heat of such a controversy and signed by experienced men with due formality is not easily to be avoided. Reasonable men look at the written composition of differences as putting the differences at rest and ending the quarrel; and the policy of the law is quite in the same direction and it is a policy of encouragement to composition. A court will not readily regard as credible the theory that a contentious discussion of the merits misled one contending party into settlement.

The thinness of this contention became apparent when the case reached this court for argument and in a letter from defendant's attorney, which the court allowed in lieu of a surreply brief, the issue of fraud seems to be still further contracted. The letter states that " the essential element " of fraud relied on by defendant " were the representations made

by Fischer to the effect that he had in his possession documents of unimpeachable character which would establish that the coffee involved was of inferior quality."

When it is borne in mind that defendant was sued by plaintiff nine days before the conference at which the document of settlement was signed and that defendant had taken the advice and assistance of counsel, and had himself sued plaintiff and the bank issuing the letter of credit six days before the settlement and that all the parties had sat around a conference table with their lawyers three days before, it is scarcely credible that defendant would be greatly moved to settle by what plaintiff's president might put forth in the way of "documents of unimpeachable character" in support of his claim. Men do not retain lawyers to advise them on legal questions and then take the validity of documents on the faith of what an adverse party says. Credulity ought to be kept attuned somewhat to realities.

The Judge at Trial Term expressed the view that the verdict was not justified; we would go a step farther and require a new trial.

The judgment should be reversed and the verdict set aside on the ground it is against the weight of the credible evidence and a new trial ordered, with costs to appellant to abide the event.

DORE, J. P., CALLAHAN, BREITEL and BOTEIN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.